# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

**BOBBY EARL WILSON (# 52274)**                                                    **PLAINTIFF**

**v.**                                                    **No. 4:09CV13-P-A**

**WARDEN MORRIS, ET AL.**                                                 **DEFENDANTS**

## MEMORANDUM OPINION

This matter comes before the court on the *pro se* prisoner complaint of Bobby Earl Wilson, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. Wilson claims that the defendants violated his right to due process by transferring him to the Mississippi State Penitentiary hospital, injecting him with anti-psychotic drugs, and placing him on suicide watch – and by confiscating his property, including legal materials, and not returning them. Finally, Wilson claims that the defendants retaliated against him for flooding his tier, damaging the light fixture and toilet in his cell, and constructing a shank from the pieces of the light fixture. For the reasons set forth below, the instant case shall be dismissed for failure to state a claim upon which relief could be granted.

## Factual Allegations

Wilson alleges that on April 25, 2006, he feared for his safety because he was threatened by members of the Vice Lord gang. He reported the incident and was moved to another location. In May of that year, an inmate who had been released from his cell to clean the tier approached Wilson's cell, and said, "You can't run, snitch, the Vice Lords will catch you in general population." Wilson red-tagged the individuals who had threatened him (so that they could be housed separately) and was moved to another location. Wilson was again threatened at his new

location, filled out more red tag forms, and was moved to another housing unit in February 2007. In September 2007, the plaintiff was upgraded to open "C" custody and told to pack his belongings. He did so and completed the move to another building, where he informed the staff that he should remain on protective custody because the Vice Lords had threatened to hurt him in general population. Lt. Simon initially placed Wilson in the same tier as open "C" custody inmates with instructions not to open his cell until instructed. Later in September 2007, Simon informed Wilson that he would be placed in open "C" custody, even though he had repeatedly requested to remain in protective custody.

Wilson then tore off the light cover in his cell, constructed a shank, and flooded the tier by stopping up his toilet and flushing it. Warden Rogers came to Wilson's cell and asked, "What is your problem?" Wilson told him that the Vice Lords wanted to hurt him because he would not join their gang, and the Black Gangster Disciples also wanted to kill him as a part of a gang war between them and the Vice Lords. As Wilson was found in possession of a shank, Warden Rogers agreed to place him in isolation until prison staff could complete the paperwork to place him in protective custody. The request for protective custody was, however, denied, and Wilson was kept in isolation until January 2008, when prison staff told him to pack his things for a move to general population. Wilson again tore down his light fixture and refused to go to general population. He was issued a rule violation report, but was not transferred to general population.

Wilson was scheduled to move to general population January 10, 2008, but he – again – refused and tore down the light fixtures and the toilet. At this point, after conferring with a prison doctor, Captain Morris had Wilson transported to the Mississippi State Penitentiary hospital in Unit 42, where he was told that he must sign a document – or he would be

immobilized while a nurse injected him with anti-psychotic medication. Wilson signed the document and was transported back to his housing unit. Prison staff told Wilson to pack his things for a move to general population again on January 30, 2008, and – once again – he tore down the light fixture and toilet. He was then escorted to the holding tank and constrained by five corrections officers while a nurse injected him with an anti-psychotic drug. Once the drug took effect and Wilson had calmed down, he returned to his cell, where he remained drowsy for three days.

In mid-February 2008, Wilson started a fire in his cell and melted a hole in the cell's observation window. The staff moved him to another cell stripped of all property except the boxer underwear Wilson had on. Captain Davenport took the plaintiff's box of legal papers but did not issue a property slip to document the existence of the box. About a week later, the plaintiff was moved to the hospital at Unit 42, injected with anti-psychotic medication, and placed on suicide watch.

He was then moved to a unit for mentally ill prisoners on February 27, 2008. He requested his legal papers and submitted a request form but was told that his box of legal papers could not be found. In response Wilson – again – tore off the light fixtures and the toilet in his cell – and was again moved to the Unit 42 hospital, where he saw Dr. Nagle, who had ordered the anti-psychotic medication to be used. Wilson stated that he was not crazy and asked why the doctor ordered the injections. Dr. Nagle responded, "You can't be tearing up the cells." Wilson answered, "Administration can stop it if they wanted by removing the light fixtures in the cell. They don't have to shoot me with an anti-psychotic drug." Wilson later asked Warden Rogers why prison staff and nurses injected him with drugs and placed him on suicide watch; Rogers

answered, "for tearing my cell."

Wilson filed a grievance regarding the confiscation of his legal papers on April 4, 2008. He exhausted prison administrative remedies and sought relief in the Circuit Court of Sunflower County, Mississippi. The Circuit Court denied Wilson's claims on the merits, holding, "Petitioner was removed from his cell, because he burned it and had to be moved . . . . Petitioner provided no property slip for the legal materials he claims were lost . . . . Further, it is possible that the materials were burned up in the fire [the petitioner started in his cell] . . . . As such, this Court hereby finds that Petitioner is not entitled to the relief requested and that this Motion to Show Cause should be and [is] hereby denied and this Cause dismissed with prejudice." *See* Exhibit E-1 to the plaintiff's complaint.

Wilson requested a transfer to the Wilkinson County Correctional Facility in April 2008 – and again in September 2008. He also filed a grievance seeking protective custody on September 14, 2008. Assistant Warden Foster initially decided that Wilson "is on long-term segregation and not eligible for open custody privilege." Wilson was, however, upgraded to open custody and scheduled to move to general population in December 2008. Wilson again refused to go and received a rule violation report. Wilson filed another grievance seeking protective custody based upon threats he had received, but the response stated that Wilson was no longer housed with the inmates listed on his red tag forms.

## Discussion

Wilson claims that the defendants violated his right to due process by administering an anti-psychotic drug to him, placing him on suicide watch, and placing him on a program for mental health treatment without his consent. He also claims that the defendants took these

actions to retaliate against him for destroying the light fixture and toilet in his cell numerous times, constructing a shank, and flooding his cell and the tier with toilet water. Finally, Wilson claims that the defendants violated his right to due process by confiscating his legal materials from his cell after he started a fire in his cell. For the reasons set forth below, these claims shall be dismissed for failure to state a claim upon which relief could be granted.

### Due Process – Administration of Anti-Psychotic Drugs, Placement on Suicide Watch, and Treatment for Mental Illness

Wilson claims that the prison doctor's decision to have him moved to the penitentiary hospital, dosed with anti-psychotic drugs, and placed on a suicide watch violated his right to due process. This claim is without merit. The plaintiff admits that he repeatedly tore down the light fixtures in his cells, tore up the toilet in his cell, flooded his cell and the tier with toilet water, started a fire in his cell, melted a hole in the cell observation window, and – at least once – used the pieces of his light fixture to construct a shank. The plaintiff argues that his actions did not constitute a threat to himself or others; however, he does not explain what he intended to do with the shank he constructed – or why he melted a hole in the observation window of his cell. A rational prison staff member or doctor could conclude that the shank was intended for use on *someone* – either the plaintiff, another inmate, or a staff member (perhaps through the hole in the observation window). Wilson's propensity to rip the fixtures from his cell to make such an implement is reason for a prison doctor to conclude that he has become a danger to himself or others. As such, the prison staff did not violate Wilson's due process rights in conferring with a doctor on how to handle the plaintiff's disruptive and dangerous behavior, and the prison doctor did not violate due process in ordering the plaintiff's move to other housing for treatment and observation. For these reasons, the plaintiff's claim for violation of due process regarding the

move to the prison hospital, administration of anti-psychotic drugs, and placement on suicide watch shall be dismissed for failure to state a claim upon which relief could be granted.

### Retaliation – Administration of Anti-Psychotic Drugs, Placement on Suicide Watch, and Treatment for Mental Illness

The elements of a claim under a retaliation theory are the plaintiff's invocation of "a specific constitutional right," the defendant's intent to retaliate against the plaintiff for his or her exercise of that right, a retaliatory adverse act, and causation such that "but for the retaliatory motive the complained of incident . . . would not have occurred." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir.1995) (citations omitted ), *cert. denied*, 516 U.S. 1084, 116 S. Ct. 800, 133 L. Ed. 2d 747 (1996). Wilson must prove that he engaged in constitutionally protected activity, faced adverse consequences (treatment for mental illness) and that such action was taken "in an effort to chill [his] access to the courts or to punish [him] for having brought suit." *Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1296 (5th Cir.), *cert. denied*, 513 U.S. 926, 115 S. Ct. 312, 130 L. Ed. 2d 275 (1994); *see also Serio v. Members of Louisiana State Board of Pardons*, 821 F.2d 1112, 1114 (5th Cir.1987). A prisoner must show more than his "personal belief that he is the victim of retaliation." *Edwards*, 51 F.3d at 580. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997).

In this case, Wilson does not meet the first criteria, as he has not invoked a constitutional right. Wilson alleges that the defendants retaliated against him for "tearing the light and toilet fixtures." As there is no constitutional right to destroy prison property, Wilson's allegation of retaliation shall be dismissed for failure to state a claim upon which relief could be granted.

### Due Process – Confiscation of Legal Materials

Finally, Wilson alleges that the defendants have violated his right to due process by confiscating his legal materials and not returning them to him. These claims are barred by the

doctrine of *res judicata,* (claim preclusion), and by the related doctrine of collateral estoppel (issue preclusion). *Res judicata* means "a thing decided;" the doctrine states that a final judgment on the merits rendered by a court of competent jurisdiction is conclusive as to the parties and their privies; therefore, attempts to litigate the matter further are barred. *Cromwell v. County of Sac.*, 94 U.S. 351, 352 (1876), *Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc.*, 575 F.2d 530, 535 (5th Cir. 1978). *Res judicata* bars a plaintiff from bringing a second suit based upon the same event or series of events by asserting additional facts *or proceeding under a different legal theory*; the doctrine prevents "litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." *Brown v. Felsen*, 442 U.S. 127, 131, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979); *see also Goldberg v. R. J. Longo Constr. Co.*, 54 F.3d 243, 246 (5th Cir. 1995) (*res judicata* bars claims that were or could have been raised in prior actions). In the Fifth Circuit *res judicata* bars a claim if: (1) the parties are the same in both actions, (2) the prior judgment is rendered by a court of competent jurisdiction, (3) the prior judgment was final on the merits; and (4) the cases involve the same cause of action. *Travelers Ins. Co. v. St. Jude Hospital of Kenner*, 37 F.3d 193, 195 (5th Cir. 1994). Two cases involve the same cause of action if both cases arise out of the same nucleus of operative facts. *Id. Collateral estoppel*, or issue preclusion, on the other hand, precludes relitigation of issues actually adjudicated, and essential to the judgment, in prior litigation involving a party to the first case. *Allen v. McCurry*, 449 U.S. 90, 94, 101 S. Ct. 411, 66 L. Ed. 2d 308 (1980).

Wilson brought his claim that the defendants violated his right to due process in confiscating his legal materials in the Circuit Court of Sunflower County, Mississippi, which

entered an order dismissing these claims on the merits.  *See* Exhibit E-1 to the Complaint.  The doctrine of *res judicata* bars the plaintiff from re-litigating any claims arising out of the alleged confiscation of his legal materials and any suits arising out of those events as to any parties he actually sued regarding those events.  Therefore, under the doctrines of claim preclusion and issue preclusion, the plaintiff's claims arising out of the alleged removal of his legal materials from his cell shall be dismissed with prejudice, as a valid judgment has been entered against him in state court in Mississippi covering this precise issue.

In sum, this case shall be dismissed with prejudice for failure to state a claim upon which relief could be granted.  A final judgment consistent with this memorandum opinion shall issue today.

**SO ORDERED,** this the 1st day of September, 2009.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE